United States District Court
Southern District of Texas
**ENTERED**
September 28, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| PATRICK SEAN HAWKINS, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:26-cv-00026 |
| | § | |
| WELLS FARGO BANK, N.A., et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |

## OPINION AND ORDER

Plaintiff Patrick Sean Hawkins has sued Defendants Wells Fargo Bank, N.A. ("Wells Fargo"); Wells Fargo & Company Short Term Disability Plan (the "Plan"); and the Lincoln National Life Insurance Company for a variety of claims relating to his employment with Wells Fargo.[1] Those claims, which are set forth in the Second Amended Complaint, include: wrongful denial of benefits under ERISA § 502(a)(1)(B) (Count I); equitable relief under ERISA § 502(a)(3) (Count II);[2] interference and retaliation under ERISA § 510 (Count III); disability discrimination under the Americans with Disabilities Act (Count IV); disability discrimination under § 504 of the Rehabilitation Act (Count V); retaliation under the Rehabilitation Act (Count VI); and declaratory relief with respect to the arbitrability of his claims (Count VII). *See* Dkt. 21.

The parties have extensively briefed the arbitrability of Hawkins's claims. Hawkins filed a motion for declaratory judgment, arguing that Counts III, IV, V, and VI are not subject to arbitration. *See* Dkt. 32. The Wells Fargo Defendants filed a motion to compel arbitration, asking that Counts III, IV, V, and VI be sent to

---

[1] I will refer to Wells Fargo and the Plan, collectively, as "the Wells Fargo Defendants."

[2] The court has dismissed Count II for failure to state a claim. *See* Dkt. 39.

arbitration. *See* Dkt. 38.[3] Since his initial filing, Hawkins has softened his position on arbitrability, conceding that Counts IV, V, and VI must be arbitrated. *See* Dkt. 46 at 1–2. The parties both agree that Count I is *not* subject to arbitration. The sole issue in dispute then is whether Count III, Hawkins's ERISA § 510 interference and retaliation claim, must be compelled to arbitration.[4]

## LEGAL STANDARD

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (quotation omitted). In deciding a motion to compel arbitration, district courts engage in a two-step inquiry. I must first ascertain whether the parties agreed to arbitrate the dispute. *See Polyflow, L.L.C. v. Specialty RTP, L.L.C.*, 993 F.3d 295, 302 (5th Cir. 2021). This "question involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.* (quotation omitted). If I find that the parties agreed to arbitrate the claims at issue, I must then determine "whether any federal statute or policy renders the claims nonarbitrable." *Id.* (quotation omitted).

The Federal Arbitration Act ("FAA") "expresses a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of

---

[3] Lincoln has not requested that any claim brought against it be sent to arbitration.

[4] The Fifth Circuit has yet to address whether a motion to compel arbitration is a dispositive motion. At least two circuit courts have observed that "[a] ruling on a motion to compel arbitration does not dispose of the case, or any claim or defense found therein. Instead, orders granting this type of motion merely suspend the litigation while orders denying it continue the underlying litigation." *V.I. Water & Power Auth. v. Gen. Elec. Int'l. Inc.*, 561 F. App'x 131, 134 (3d Cir. 2014) (citing *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 14 (1st Cir. 2010)). I am confident the Fifth Circuit will reach the same conclusion when it ultimately confronts the issue. Because a motion to compel arbitration is non-dispositive, I can issue an opinion and order, rather than a report and recommendation. *See Balderrama v. Deployed Servs., LLC*, 819 F. Supp. 3d 639, 653 n.58 (W.D. Tex. 2026) (collecting cases).

claims should be resolved in favor of arbitration." *Wash. Mut. Fin. Grp. v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004) (quotation omitted). The FAA "leaves no place" for the court to exercise discretion. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). As a result, I must order the parties to arbitrate issues covered by a valid arbitration agreement. *See id.*

**DISCUSSION**

As a condition of being hired by Wells Fargo in September 2022, Hawkins signed the Wells Fargo Mutual Arbitration Agreement (the "Arbitration Agreement"). The parties stipulate that the Arbitration Agreement is a valid agreement to arbitrate. The question I must address is whether the Arbitration Agreement encompasses Hawkins's ERISA § 510 interference and retaliation claim.

I begin by focusing on the Arbitration Agreement's express language. The first paragraph of the Arbitration Agreement provides as follows:

> Wells Fargo and I mutually agree that any legal Claims arising out of my application for employment, employment, or separation from employment with Wells Fargo shall be resolved by final and binding arbitration. Except as noted below, Wells Fargo and I agree to waive our rights to pursue any Claims in court or before a jury. This Agreement is subject to the Federal Arbitration Act.

Dkt. 38-2 at 6.

The second paragraph, titled "COVERED CLAIMS," identifies those disputes subject to arbitration:

> The Claims covered by this Agreement with any Wells Fargo entity, its officers, directors, shareholders, employees, agents, parent companies, subsidiaries, affiliates, predecessors, successors, and assigns (collectively "Wells Fargo") include, but are not limited to, claims for discrimination, harassment, *retaliation*, tortious conduct, wrongful discharge, breach of contract, promissory estoppel, expense reimbursement, wages, compensation, or *claims for violations of any federal . . . statute*, regulation, or common law, including, but not limited to, Title VII of the Civil Rights Act of 1964, Americans with Disabilities Act, Age Discrimination in Employment Act, Older Workers Benefit Protection Act, Rehabilitation Act, the Equal Pay Act,

> Worker Adjustment and Retraining Notification Act, Family and Medical Leave Act, the Fair Labor Standards Act, and all applicable amendments.

*Id.* (emphasis added).

The Arbitration Agreement also lists claims that are *not* subject to arbitration: "This Agreement shall not apply to worker's compensation claims, unemployment compensation benefit claims, or *claims for benefits under the Employee Retirement Income Security Act*." *Id.* (emphasis added). Relying on this carve-out language, Hawkins contends that his ERISA § 510 interference and retaliation claim is not arbitrable because it is a "claim[] for benefits under the Employee Retirement Income Security Act." *Id.*[5] The Wells Fargo Defendants disagree, arguing that "[a] § 510 interference claim is not a 'claim for benefits.' It is a retaliation and wrongful-termination claim that is expressly covered by the Arbitration Agreement's broad 'Covered Claims' provision." Dkt. 48 at 2. I agree with the Wells Fargo Defendants.

ERISA § 510 makes it unlawful to "discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan" or "for the purpose of interfering with the attainment of any right to which such participant may become entitled [to] under [a benefit] plan." 29 U.S.C. § 1140. Since its inception, the aim of ERISA § 510 has been to prevent "unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested [plan] rights." *West v. Butler*, 621 F.2d 240, 245 (6th Cir. 1980).

Hawkins's ERISA § 510 claim falls squarely within the Arbitration Agreement's broad language requiring mandatory arbitration for "Claims arising out of [his] . . . employment, or separation from employment with Wells Fargo." Dkt. 38-2 at 6. "Claims" are defined by the Arbitration Agreement to include

[5] It is undisputed that Count I, Hawkins's claim for benefits under ERISA § 502(a)(1)(B), fits within this exclusion and is not arbitrable.

"claims for discrimination, harassment, retaliation, . . . wrongful discharge, . . . or claims for violations of any federal . . . statute." *Id.* This language evinces a clear intent to encompass all discrimination and interference/retaliation claims, which would include a claim for improper termination in violation of ERISA § 510. Hawkins describes his ERISA § 510 claim in the Second Amended Complaint as follows: Wells Fargo's "decision to terminate Plaintiff was motivated, at least in part, by Plaintiff's pursuit of ERISA benefits and his provision of information to the Department of Labor, and was taken with the specific intent to interfere with Plaintiff's attainment of rights under an ERISA-governed plan." Dkt. 21 at 14. Hawkins's ERISA § 510 claim for interference and retaliation must be arbitrated.

The Arbitration Agreement does not exclude all ERISA-related disputes from arbitration. It carves-out from arbitration only those "claims for *benefits* under the Employee Retirement Income Security Act." Dkt. 38-2 at 6 (emphasis added). Because Count I seeks benefits allegedly due under the Plan, the parties recognize that it falls within this narrow exclusion from arbitration. Count III, on the other hand, challenges the legality of Hawkins's termination and Wells Fargo's motivation for it. Count III may involve benefits, but it is a claim for Wells Fargo's actions, not for benefits due to Hawkins. As one district court explained a few months ago: "a retaliation claim under Section 510 is not a claim for benefits; rather, it is more akin to an employment grievance that falls squarely within the [Arbitration Agreement's] broad coverage of disputes concerning the employment relationship." *Magdalasov v. ByteDance Inc.*, No. 25-13824, 2026 WL 2017269, at *11 (D.N.J. July 13, 2026) (quotation omitted). In another case in which a district court ordered an ERISA § 510 claim to arbitration under a materially similar arbitration agreement with an ERISA-benefits exclusion, the court observed: "The only type of ERISA claim excluded from arbitration under the Agreement is a claim to recover benefits under an ERISA-governed plan, which is separate and distinct from a claim for wrongful termination under Section 510." *Xie v. JPMorgan Chase Short-Term Disability Plan*, No. 15-cv-4546, 2017 WL 2462675, at *8 (S.D.N.Y.

June 7, 2017). Importantly, the court continued, "[t]he Arbitration Agreement does not contain a carve-out for Section 510 claims and, on the contrary, specifically states that all claims for wrongful termination and retaliation are subject to arbitration, including those arising under federal statutes." *Id.* The same reasoning applies here. Tellingly, Hawkins cannot point to a single case holding that an ERISA § 510 claim is outside the scope of a similarly worded arbitration provision.

Having determined that the parties agreed to arbitrate Count III, I must now determine "whether any federal statute or policy renders the claims nonarbitrable." *Polyflow*, 993 F.3d at 302 (quotation omitted). Because there is no statute or policy that suggests I should disregard the unambiguous language in the Arbitration Agreement calling for arbitration, the Arbitration Agreement will be respected and Count III will be compelled to arbitration.

On September 4, 2026, I stayed all discovery obligations and briefing in this case pending resolution of the instant motion. *See* Dkt. 56. Having resolved the instant motion, I must decide whether to continue that stay as to all or part of this case pending arbitration. The United States Supreme Court has held that where all claims are arbitrable and a party requests a stay pending arbitration, "§ 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). Here, however, not all claims are arbitrable. The parties recognize that Count I must proceed in this forum. Whether to stay non-arbitrable claims pending arbitration is a decision "left to the district court . . . as a matter of its discretion to control its docket." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983). Staying Count I pending arbitration of Counts III, IV, V, and VI would serve no purpose and result in needless delay. Accordingly, the stay is lifted as to Count I. Counts III, IV, V, and VI remain stayed pending arbitration.

## CONCLUSION

For the reasons discussed above, I deny Hawkins's Motion for Declaratory Judgment (Dkt. 32) and grant Defendants' Motion to Compel Arbitration

(Dkt. 38). The Wells Fargo Defendants and Hawkins are ordered to arbitrate Counts III, IV, V, and VI in accordance with the Arbitration Agreement. The stay that I previously imposed pending resolution of the motion to compel arbitration (Dkt. 56) is lifted as to Count I, but remains as to Counts III, IV, V, and VI pending arbitration.

SIGNED this 28th day of September 2026.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE